STATE EX REL. EVO BUTERA *v.* JEREMIAH F. LOMBARDI, JR.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued February 4—decided March 31, 1959

*Richard Hanna,* with whom was *Louis DeFabritis,* for the appellant (plaintiff).

*David Goldstein,* with whom were *Arnold J. Bai* and, on the brief, *Jacob D. Zeldes,* for the appellee (defendant).

MELLITZ, J. In this proceeding, in the nature of quo warranto, Evo Butera, hereinafter referred to as the plaintiff, seeks to test the right of the defendant to occupy the office of assessor of the city and town of Danbury. The facts are not in dispute. Special Acts 1935, No. 327, § 1, provides that the members of the board of finance of the town of Danbury, the members of the board of estimate and taxation of the city of Danbury, the mayor of the city and the first selectman of the town shall con-

stitute a joint tax board for certain defined purposes, among which is the appointment of an assessor by a majority vote. 22 Spec. Laws 185. The act provides further that no member of the joint tax board, city board of estimate and taxation or town board of finance, with the exception of the mayor and the first selectman, shall hold any public office, either elective or appointive, in the city or town government. Id., 186. A meeting of the joint tax board was held on May 14, 1957, for the purpose, inter alia, of appointing an assessor. The board comprised fourteen members. Three of them besides the mayor and first selectman held other positions in the city or town government. Before a vote was taken on the appointment of an assessor, the right of these three to vote was challenged. The chairman, over objection, permitted them to vote. Seven votes were cast for the defendant and seven for the plaintiff. The chairman, pursuant to express authority in the special act, broke the tie by casting a second vote for the plaintiff and declared him elected. Exclusive of the votes cast by the challenged members and the second vote by the chairman, a majority of the votes were cast for the defendant.

It is conceded by both parties that the determination of the case turns on the status of one of the challenged members, Henry Rocano, who voted for the plaintiff and thereby brought about the tie vote which made it possible for the chairman to cast the deciding vote. Rocano was appointed to the board of estimate and taxation of the city while he was a member of the board of education of the town. At the time of the meeting on May 14, 1957, he purported to be a member of both boards. A contention that Rocano's position on the board of education was not

a public office within the meaning of the statute was advanced by the plaintiff in the trial court but was abandoned and is not before us. The position of the plaintiff is that Rocano was a qualified member of the joint tax board and eligible to vote at the meeting of May 14, 1957, in spite of the fact that he had not formally resigned his position on the board of education. This is on the theory that when he became a member of the board of estimate and taxation, and so qualified for membership on the joint tax board, the statutory prohibition against holding other public office operated to vacate his position on the board of education. The defendant, on the other hand, argues that the statute deals with qualification for membership on only the boards specifically designated and any disqualification arising from the prohibition affects only eligibility to an office named in the statute and not to any other office held by the person. This would mean that Rocano was disqualified from membership on the board of estimate and taxation and so on the joint tax board. The defendant, in his brief, says that "the precise, narrow question presented in this case [is] whether disqualification runs to the second office held and not the first office when the statute in issue establishes membership criteria for the second office."

It has long been firmly settled at common law that a person may not at one and the same time rightfully hold two offices which are incompatible, and when he accepts and qualifies for a second office which is incompatible with the first, he vacates, or by implication resigns, the first. *State ex rel. Schenck* v. *Barrett,* 121 Conn. 237, 242, 184 A. 379; 42 Am. Jur. 940, § 78; note, 100 A.L.R. 1162, 1164. Where the holding of two offices at the same time is forbidden by constitution or statute, an incompati-

bility is created similar in its effect to that of the common law, and as in the case of the latter, the acceptance of the second office operates ipso facto to vacate the first. Mechem, Public Officers § 429; 67 C.J.S. 149, § 23. "Where the holding of two offices by the same person, at the same time, is forbidden by the constitution or a statute, the effect is the same as in the case of holding incompatible offices at common law. In such case, the illegality of holding the two offices is declared by positive law, and incompatibility in fact is not essential. In each case the holding of two offices is illegal; it is made so in one case by the policy of the law, and in the other by absolute law. In either case the law presumes the officer did not intend to commit the unlawful act of holding both offices, and a surrender of the first is implied." *State ex rel. Walker* v. *Bus,* 135 Mo. 325, 330, 36 S.W. 636. Cases illustrative of the application of this principle of implied surrender of the first office where, by a constitutional or statutory provision, the holding of more than one office is expressly forbidden are: *State ex rel. Camp* v. *Herzberg,* 224 Ala. 636, 638, 141 So. 553; *People ex rel. Myers* v. *Haas,* 145 Ill. App. 283, 286; *Chambers* v. *State ex rel. Barnard,* 127 Ind. 365, 26 N.E. 893; *Lilly* v. *Jones,* 158 Md. 260, 271, 148 A. 434; *People ex rel. Henry* v. *Nostrand,* 46 N.Y. 375, 381; *State ex rel. McIntosh* v. *Long,* 186 N.C. 516, 518, 120 S.E. 87; *Darling* v. *Brunson,* 94 S.C. 207, 210, 77 S.E. 860; *State ex rel.* v. *Beveridge,* 88 Ore. 334, 336, 171 P. 1173; *Caldwell* v. *Lyon,* 168 Tenn. 607, 612, 80 S.W.2d 80; *Shell* v. *Cousins,* 77 Va. 328, 332.

In *People ex rel. Henry* v. *Nostrand,* supra, a constitutional provision declared that sheriffs should hold no other office. It was held that one who held office as a commissioner to lay out and construct

certain public highways vacated that office when he accepted the office of sheriff, to which he had been elected. In *State ex rel. Camp* v. *Herzberg,* supra, a statute creating the office of chairman of a city board of commissioners declared that no member of the commission should hold any office of profit or trust under the laws of any state. It was held that one elected to the office of chairman of the board of commissioners, upon acceptance and entry upon the duties of that office, ipso facto, without resignation, vacated the office he held as a member of the board of trustees of the University of Alabama. In *People ex rel. Myers* v. *Haas,* supra, 287, a constitutional provision declared that no judge or clerk of any court should have a seat in the General Assembly. It was held that one who was a member of the General Assembly as a senator vacated that office when he accepted the office of clerk of a municipal court. In each of these instances, the constitutional or statutory provision referred to the qualification of a person to hold the second office, and the disqualification was held to operate as a resignation of the first office. In *Magie* v. *Stoddard,* 25 Conn. 565, a statute provided that no judge or justice of the peace should hold the office of sheriff, deputy sheriff or constable, and we held that acceptance of the office of constable operated as a surrrender of the office of justice of the peace. We applied the rule that the first office was surrendered by force of the statutory prohibition, although we implied at the same time that the two offices were, in fact, incompatible. We reiterated our recognition of the principle in *State ex rel. Curran* v. *Golden,* 116 Conn. 302, 306, 164 A. 640.

The legislature must be presumed to have been aware of our interpretation of the statute involved

in the *Magie* case, supra, when it incorporated in the statute here the prohibition against the holding of other public office. The General Assembly, and those who frame its legislation, must always be presumed to be familiar with settled rules of statutory construction and the interpretation the courts have placed upon legislation which has been enacted. *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 63, 111 A.2d 4; *Forman Schools, Inc.* v. *Litchfield,* 134 Conn. 1, 6, 54 A.2d 710. If, as the defendant contends, contrary to the principle applied in the *Magie* case, supra, the legislature intended the prohibition in the statute here to be effective as a disqualification only from an office named in the statute, without reference to whether it is the first or second of two offices held, language reflecting that purpose could easily have been employed. See *State ex rel. Hayden* v. *Hill,* 181 Ore. 585, 602, 184 P.2d 366, where it was held that the legislature, by requiring that a resignation of office be in writing, manifested its disapproval of the doctrine of presumed resignation.

The defendant claims that the opinion in *State ex rel. Oakey* v. *Fowler,* 66 Conn. 294, 299, 32 A. 162, indicates that we have never indorsed the fiction of implied resignation, because we held there that the first office must be formally resigned. The statute there prohibited a selectman from holding the office of collector of town taxes "during the same official year." The holding was merely that the statute did not prohibit a selectman from becoming a candidate and being elected to the office of tax collector, but that before he could assume the duties of the latter office he was required to remove the statutory disability by resigning the office of selectman. There was no occasion to discuss the situation which would have been presented had he actually taken office as

tax collector without first resigning his office as selectman. The defendant has directed our attention to two cases which are claimed to support his position: *State ex rel. Shank* v. *Gard,* 19 Ohio C.C. Dec. 426, 432, 8 Ohio C.C.R. (N.S.) 599, 607, aff'd, 75 Ohio St. 606, 80 N.E. 1133; and *State ex rel. Tilden* v. *Harbourt,* 70 Ohio App. 417, 420, 46 N.E.2d 435. An essential element in the latter case was expressly repudiated in *State ex rel. Scarl* v. *Small,* 103 Ohio App. 214, 216, 145 N.E.2d 200. Nothing has been presented to persuade us that, on the facts established, the statute in the instant case requires an interpretation contrary to the accepted rule and that applied in *Magie* v. *Stoddard,* supra. By the operation of the provision of the statute prohibiting any member of the joint tax board or city board of estimate and taxation from holding any other public office, Rocano effectively surrendered and relinquished his position on the board of education when he became a member of the board of estimate and taxation. He was, therefore, a qualified member of the joint tax board at the time of the meeting of May 14, 1957, and eligible to vote for the appointment of the plaintiff as assessor.

The trial court should have sustained the claim of the plaintiff that he was duly appointed to the office of assessor for a six-year period commencing July 1, 1957, and is legally entitled to the office, and that the defendant failed to establish title to the office.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in favor of the plaintiff, decreeing that the defendant be ousted and altogether excluded from the office of assessor of the city and town of Danbury.

In this opinion the other judges concurred.