STATE OF CONNECTICUT EX REL. HENRY SCHENCK *vs.* FRANK P. BARRETT.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued January 9th—decided April 7th, 1936.

*Thomas J. Ryle,* with whom was *Peter J. Ryan,* for the appellant (defendant).

*Samuel Plotnick,* with whom, on the brief, was *Bernard Plotnick,* for the appellee (plaintiff).

HINMAN, J.  Since 1917 the town of Stamford has had a board of finance, established under the provisions of the statutes, now Chapter 28 of the General Statutes.  On October 3d, 1932, the relator was elected a member of that board for a term of six years, and qualified and acted as such member.  On January 21st, 1935, the board passed a resolution declaring a vacancy in its membership "because of disqualification by [the relator's] acceptance of the appointment to the salaried office of Chief Deputy Commissioner of Finance . . . of the City of Stamford," which is a municipal corporation within the territorial limits of the town.  At the same meeting the board elected the respondent to fill the vacancy.  The relator then brought this action.  The respondent, on whom rested the burden to establish a legal title to the office in dispute (*State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 541, 89 Atl. 172), pleaded that about January 1st, 1935, the relator "was appointed to and accepted the office of Chief Deputy Commissioner of Finance of the City of Stamford," a salaried office of that city, and that the "office of Chief Deputy Commissioner of Finance of the City of Stamford is incompatible with the office of member of the Board of Finance of the Town of Stamford, and some of the respective duties thereof are in conflict."

The record shows that the evidence received pertaining to the issues of fact raised by these allegations and the denial of them was directed to proof by the respondent that the relator occupied the office of chief

deputy commissioner of finance and by the relator that his connection with the city department of finance was in another capacity. Evidence which precludes correction here supports the finding of the trial court that the commissioner of finance did not at any time appoint a chief deputy under § 102 of the charter. This section (Special Laws, 1933, p. 1220) provides that the commissioner "shall appoint a chief deputy . . . who shall act in his place and stead in case of the absence or disability or a vacancy in the office of the commissioner. . . ." Section 93 (Special Laws, 1933, p. 1217) provides that the commissioner "shall appoint and remove at pleasure such deputies, bureau heads, assistants or other subordinates and employees as he may deem necessary and for which appropriations have been made, and may fix their salaries and wages." The trial court found that the relator was verbally appointed as a deputy commissioner, never furnished a bond or took oath of office, performed such duties as were directed by the commissioner, was not employed for any fixed period, and was subject to dismissal at the pleasure of the commissioner. We can make no change in the finding which would materially affect the conclusion resulting, that "the relator was not appointed to and did not occupy the office of Chief Deputy Commissioner of Finance." This conclusion is decisive of the specific question presented by the case as pleaded, viz.: whether or not the relator became disqualified from membership in the town board of finance by reason of acceptance and occupancy of the office of chief deputy commissioner of finance of the city.

However, it appears from an "additional finding" made by the trial court that while the respondent made no motion to amend his plea he advanced, in his trial brief, a further claim that a deputy commis-

sioner, as well as the chief deputy commissioner, is within the provision of § 414 of the General Statutes that a member of a town board of finance "shall hold no salaried office;" also that the duties are incompatible at common law with membership in the board. The court states that it "did not pass upon these questions because it was not conceived that they were within the pleadings or otherwise before it," and declined to include in the finding claims of law that the relator became disqualified by accepting appointment as a deputy in the department of finance of the city. The appellant assigns this refusal as error. The variance between the pleading that the relator was "chief deputy commissioner of finance" and the proof that he was appointed as a deputy commissioner, only, was not one which affected the identity or other essential of the cause and we do not see how it misled or prejudiced the relator in the trial on the merits or could have done so. Therefore it would seem, especially as the action was not exclusively a private controversy but one affecting the public interest, that the situation created by this development of the proof afforded appropriate occasion for suggestion or direction, by the trial court, of an amendment reflecting it, also that, even without such an amendment, the variance properly may be treated as so immaterial as to be disregarded. *Pierce, Butler & Pierce Mfg. Corporation* v. *Enders,* 118 Conn. 610, 613, 174 Atl. 169; *Mazulis* v. *Zeldner,* 116 Conn. 314, 318, 164 Atl. 713. While, naturally enough, claims of law adapted to proof of incumbency as a deputy commissioner instead of chief deputy were not advanced until after the evidence as to the relator's actual situation and duties had been submitted, they were made in argument by brief and so within the course of the trial. Therefore it is open to us to consider and determine whether the position

which the relator is found to have held under the city government was such as to disqualify him for the town office and we regard it as, technically, incumbent upon us to do so, although it is included in the finding that "about May 1st, 1935, the relator resigned from the department of finance."

As to the applicability of § 414 of the General Statutes, it is enough to say, without deciding whether incumbency of any salaried office other than one under the town government would work the statutory disqualification, that the powers and duties of the relator are not shown to have exceeded those which would be appropriate to a chief clerk to the commissioner of finance and he is not shown to have been so invested with any portion of "sovereign authority" of the commissioner as to constitute an "office" within the purview of this statute. *Burrell* v. *Bridgeport,* 96 Conn. 555, 114 Atl. 679; *State ex rel. Neal* v. *Brethauer,* 83 Conn. 143, 75 Atl. 705; *Kelly* v. *Bridgeport,* 111 Conn. 667, 671, 153 Atl. 778.

Incompatibility which at common law operates to vacate one office by reason of incumbency of another exists when the character and nature of the office or their relation to each other are such that they ought not to be held by the same person because of "the contrariety and antagonism which would result in the attempt by one person to faithfully and impartially discharge the duties of one, toward the incumbent of the other." Mechem, Public Officers, § 422; *People ex rel. Ryan* v. *Green,* 58 N. Y. 295, 304; *State ex rel. Metcalf* v. *Goff,* 15 R. I. 505, 9 Atl. 226; *Bryan* v. *Cattell,* 15 Iowa, 538; *Howard* v. *Harrington,* 114 Me. 443, 96 Atl. 769, L. R. A. 1917A, 211; *State ex rel. Clawson* v. *Thompson,* 20 N. J. L. 689; *Kenney* v. *Goergen,* 36 Minn. 190, 31 N. W. 210; 2 McQuillin, Municipal Corporations (2d Ed.) § 469. Some cases

have regarded as a test considerations of public policy rendering it improper for one incumbent to occupy both offices. "The consensus of judicial opinion seems to be that the question must be determined largely from a consideration of the duties of each, having, in so doing, a due regard for the public interest." *State ex rel. Crawford* v. *Anderson,* 155 Iowa, 271, 273, 136 N. W. 128; *State* v. *Buttz,* 9 S. C. 156; Mechem, Public Officers, § 422. Incompatibility is apparent when the holder of one office is subordinate to or has supervision over the other, or has the power of appointment, removal, or punishment of that other, or the audit of his accounts, or the regulation of his compensation. *State ex rel. Klick* v. *Wittmer,* 50 Mont. 22, 144 Pac. 648; *Colton* v. *Phillips,* 56 N. H. 220; *State ex rel. Rosenheim* v. *Hoyt,* 2 Ore. 246; *Gaw* v. *Ashley,* 195 Mass. 173, 80 N. E. 790; *Attorney General* v. *Henry,* 262 Mass. 127, 159 N. E. 539. *Magie* v. *Stoddard,* 25 Conn. 565, while attempting no general definition, affords a clear example of incompatibility— between the offices of constable and justice of the peace. Numerous illustrative cases are annotated in L. R. A. 1917A, p. 216 et seq. and cited in 46 C. J. p. 942.

Our present inquiry is whether or not the nature and duties of the office of member of the town board of finance and that which the relator is found to have held under the city government were such that "contrariety and antagonism would result in the attempt by one person to faithfully and impartially discharge the duties of both." *People ex rel. Ryan* v. *Green,* supra; *Haymaker* v. *State ex rel. McCain,* 22 N. M. 400, 163 Pac. 248, L. R. A. 1917D, 210. Incompatibility, if it existed, would result largely from certain interrelations between the governments of the town and the city which is located within but not

coterminous with the territorial limits of the town. *Stamford* v. *Stamford*, 107 Conn. 596, 141 Atl. 891. The town board of finance is composed of six members (General Statutes, § 414); the city also has a board of finance of six members (Charter, § 11). Under § 144 of the charter a bi-partisan taxation board of four members is appointed by a joint meeting of the members of the town and city boards of finance, and has jurisdiction and control of the assessment and collection of taxes for both town and city. The taxation board appoints a tax collector and assessor. A board of relief of three members is appointed by joint action of the town and city boards of finance. The expense of administering the assessment and collection of taxes is borne equally by the town and city, and in the event of disagreeing action on appropriations the difference is settled by joint action of the town and city boards of finance (Charter, § 156). The statutory limitation of aggregate indebtedness through the issuance of bonds includes those issued by the city as well as the town. General Statutes, Cum. Sup. 1935, § 99c; *Stamford* v. *Stamford*, supra, p. 611. The town is required to contribute to the expense of maintenance, by the city, of highways and bridges within the city limits (Charter, § 187) and one-half the deficit in maintenance of the city court (§ 181). The city rents offices and space in a building owned by the town. The town performs all educational and charitable functions within the city area as well as outside. It is apparent that these relations involve at least strong possibilities of conflicts of financial interests between the city and town in the decision of which a member of the town board of finance would be called upon to participate.

The commissioner of finance is head of the department of finance of the city, which comprises three bureaus—Collections, Accounts Purchases and Rec-

ords, and Assessments—and the commissioner has all the rights, powers, duties and obligations of city treasurer and city clerk. Clearly his office is incompatible with membership in the town board of finance. The relator was a subordinate of the commissioner, appointed by him for an indefinite period, subject to dismissal at his pleasure, and performing such duties as were designated by him, consisting, generally, of duties which ordinarily would appertain to a city clerk and treasurer, and which, apparently, but for the incumbency of the relator would be performed appropriately by the commissioner himself. The compensation paid the relator by the city was at the rate of $2500 per annum; under the statute (§ 414) his membership in the town board of finance carried no compensation. It is not unnatural that he should have entertained, and it is significant that he is found to have expressed, "apprehension lest he might find it embarrassing in voting on certain matters that might come before a joint meeting of the city and town boards of finance because he held his position in the [city] department of finance at the will of his superior." In any case of conflict between the financial interests of the town and those of the city, involving action by the town board of finance or joint action by the town and city boards he would be in a situation of divided loyalty similar to that appertaining to the commissioner of finance, and, as well, subject at least to temptation to subservience to the will of the commissioner upon whom was dependent his retention in what, so far as appears, was his only remunerative employment. On the whole, the attributes of the exceptional situation presented by the facts of this case require us to hold that it involves such potential and probable conflicts of interest, affecting the attempt of one person impartially and faithfully to perform the duties of both offices, as

to render them incompatible within the rule, especially when, as here, personal interests are transcended by the important public interest of proper administration of municipal finances.

There is error; the cause is remanded to the Superior Court with direction to enter judgment for the respondent.

In this opinion the other judges concurred.